```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

DONNA L. WOLFE

                Plaintiff,           05-CV-6342

v.                                                **DECISION**
                                                  **and ORDER**
JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

## INTRODUCTION

Plaintiff, Donna L. Wolfe ("plaintiff" or "Wolfe"), filed this action seeking review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Jurisdiction to review the Commissioner's decision arises under 42 U.S.C. § 405(g). On March 23, 2006, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff was not eligible for DIB or SSI. On March 24, 2006 the plaintiff moved for judgment on the pleadings.

For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the defendant's motion for judgment on the pleadings is granted.

PROCEDURAL HISTORY

Plaintiff allegedly became disabled on April 23, 1999 due to depression and anxiety (Tr. 16)[1]. On October 15, 2002 she filed an application for DIB and SSI (Tr. 15). Her claims were initially denied (Tr. 24-28) and Wolfe requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 29). A hearing was held on October 20, 2004 via video teleconference between Washington, D.C. and Rochester, N.Y. (Tr. 160-194). Wolfe appeared with counsel and testified. A vocational expert also testified (Tr. 162). The ALJ subsequently denied her claims on February 2, 2005 (Tr. 15-22). On May 13, 2005, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Wolfe's request for review (Tr. 5-7). She filed this action on June 29, 2005, appealing the ALJ's decision pursuant to 42 U.S.C. § 405(g).

BACKGROUND

A. Non-Medical Evidence and Hearing Testimony

Donna Lou Wolfe was born on April 13, 1952 (Tr. 148, 163). She has a high school diploma and an associate's degree in business from SUNY Morrisville (Tr. 115, 163). She also took continuing education credits in insurance throughout her career (Tr. 115, 163). At the time of her disability, Wolfe was working as a vice-

---

[1] All citations "Tr." refer to the Transcript of the Administrative Record submitted to the Court as part of the defendant's Answer which include, *inter alia*, plaintiff's medical records, a transcript of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff DIB and SSI.

president and senior insurance broker for Aon Corporation, an insurance brokerage in Manhattan, and earning nearly $80,000 per year as a salaried employee (Tr. 74-75, 164). In July of 1997, Wolfe suffered a major anxiety attack directly related to an error at work that would have cost her company millions of dollars (Tr. 165-166). The incident was resolved, but her anxiety attacks became more and more frequent and she also became depressed (Tr. 166-167). She started losing her hair, lost forty pounds, and her teeth began to fall out (Tr. 170). Her work performance became unsatisfactory and she was terminated on April 23, 1999 (Tr. 167). Although medical records from St. Vincent's Hospital in New York, N.Y. indicated that she had a long history of alcohol abuse, Wolfe stated that she only drank too much immediately after she was terminated (Tr. 168-169). She spent the next three years in a state of clinical depression and away from society (Tr. 180). She was extremely agoraphobic, would not leave her apartment and would not socialize with others or even pick up the telephone (Tr. 173-175). In January of 2002 she moved in with her brother in Canandaigua, N.Y. (Tr. 175) and in October of 2002 she was able to move into a public-assistance motel by herself (Tr. 176). She has been receiving therapy and is on Paxil and takes a prescription sleeping aid as needed (Tr. 176, 178). She is hoping to get her bachelor's degree and return to work (Tr. 179-180), but does not feel she has reached that point yet (Tr. 180).

B. <u>Medical Evidence</u>

In September of 1999, plaintiff was admitted to St. Vincent's Hospital Department of Psychiatry Adult Psychiatric Services for complaints of depression and anxiety (Tr. 96-103). She reported a pervasive sad mood, decreased sleep, a decreased appetite, low motivation, difficulty concentrating and no energy (Tr. 98, 100). She initially reported that she drank one glass of wine per day but later reported that she drank three to four bottles of wine per day and had had a problem with alcohol for the past ten years, although her problem has become worse in the last two years (Tr. 103, 106). Her drinking problem led to her depression and loss of her job (Tr. 106). On examination, she was coherent, with no paranoia, delusions or hallucinations (Tr. 100). She had a Global Assessment of Functioning score of 50, which defined her symptoms as severe (Tr. 101) She was diagnosed with major depression.

Wolfe attended St. Vincent's Alcohol and Addiction Outreach Program ("AAOP") from November to December of 1999 (Tr. 107-113). She appeared to be doing well but did not attend her last few appointments (Tr. 113). AAOP wrote her a letter but she never responded and was therefore discharged from the program (Tr. 107).

In October of 2002 Wolfe was consultatively examined by Joel Schorr, Ed.D. (Tr. 114-118). She reported that she would like to be on medication but could not afford it (Tr. 115). She experienced increased anxiety and tension, occasional difficulty

4

sleeping, low energy, regular depressed moods and crying spells, a hyper startle response, difficulty concentrating and panic attacks (Tr. 115-116).  She did not suffer from any hallucinations or delusions (Tr. 116) and did not then have any suicidal thoughts, although she did when she lost her job (Tr. 115).  She stated that she has a glass of wine once in a while but no longer suffered from alcohol abuse (Tr. 116).  On examination Dr. Schorr reported that she was cooperative, her thought processes appeared to be coherent and goal-directed, and her motor behavior was adequate with some anxiety noted in terms of her hand movements and facial expressions (Tr. 117).  Her affect appeared quite anxious and jittery throughout the interview and her attention and concentration appeared to be mildly impaired due to the emotional aspect of the interviewing process (Id.).  He opined that she was on the road to recovery but in need of ongoing treatment and assistance, both through medication and therapy (Tr. 117-118).  He diagnosed post traumatic stress disorder with accompanying anxiety and agoraphobic tendencies with some panic tendencies and a depressive disorder with a prognosis of fair to good (Tr. 118).  Dr. Schorr added that "[t]he claimant should be capable of handling funds on her own behalf when she is in more control of herself.  It is felt that she could not perform in an adequate manner or attend work on an adequate basis in order to be a productive work-related individual at this time" (Id.).

In December of 2002 Dr. George Burnett, a State Agency psychiatrist, reviewed Wolfe's medical evidence and diagnosed a depressive disorder (Tr. 122) and post traumatic stress disorder (Tr. 124). He concluded that Wolfe had a mild restriction of activities of daily living and mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation (Tr. 129). Dr. Burnett also concluded that plaintiff was not significantly limited in her ability to remember locations and work-like procedures; understand, remember or carry out very short and simple or detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; or set realistic goals and make plans independently of others (Tr. 133-134). He opined that Wolfe retained the ability to understand and remember instructions and to perform simple, repetitive tasks in a low contact setting (Tr. 131).

LEGAL STANDARD

A. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

B. Legal Standards

The plaintiff maintains that he is entitled to DIB and SSI benefits as provided in Titles II and XVI of the Act. See 42 U.S.C. §§ 423(d), 1382(a)(3). Entitlement to benefits under the Act is conditioned upon compliance with all relevant requirements of the statute.

To be entitled to DIB, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. §§ 1382a, 1382b. Under either statute, however, a

claimant must demonstrate the inability to engage in a substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Furthermore, a claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1520, 416.920.

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the

impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.  If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. <u>Bush v. Shalala</u>, 94 F.3d 40, 45 (2d Cir. 1996).

<u>DISCUSSION</u>

Here, the ALJ properly followed the five step procedure.  The ALJ found that the plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) suffered from a "severe" affective disorder and anxiety disorder as based on the requirements in the Regulations at 20 C.F.R. §§ 404.1520 and 416.920; (3) did not have an impairment meeting or medically equivalent to one of the listed impairments in Appendix 1 of the C.F.R., Subpart P, Regulations No. 4; (4) was unable to perform her past relevant work as an insurance broker but could perform work meeting the residual functional capacity for all exertional levels with being limited to performing simple, routine, unskilled tasks involving no more than minimal stress (exclude production pace work) and no more than minimal contact with the public, co-workers or supervisors; and (5) showed that there were a significant number of jobs in the national economy which she

could perform, such as a stock clerk, building cleaner or grounds maintenance person (Tr. 18-22).

The Commissioner contends that because there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled, her motion for judgment on the pleadings should be granted.

The plaintiff contends that although the ALJ followed the five step procedure, he improperly concluded that Wolfe was not disabled. Specifically, the plaintiff argues that the ALJ failed to accord the appropriate amount of weight to the medical evidence. Therefore, the plaintiff argues that because the ALJ erred, the determination should be reversed or in the alternative, it should be remanded to require the ALJ to apply the proper legal standards in weighing the evidence. This Court finds that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled.

The ALJ did consider the opinions of both Dr. Schorr, the consultative examiner, and Dr. Burnett, the non-examining State Agency psychiatrist. The ALJ concluded that Dr. Burnett's opinion was consistent with the medical evidence as a whole and accepted his findings that Wolfe's impairments resulted in no more than mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of

decompensation (Tr. 18). The ALJ rejected Dr. Schorr's opinion because there was nothing in his report suggesting significant work-related limitations (Tr. 19). He relied solely on Wolfe's subjective statements and only noted that she appeared anxious, jittery and tense throughout the interview (Tr. 117).

The ALJ also correctly concluded that Wolfe's alcohol abuse was not material to his decision (Tr. 18). Although records from St. Vincent's Hospital show that Wolfe abused alcohol (Tr. 96-113), Wolfe told Dr. Schorr that she drank heavily for a short period of time following her termination but was able remove the effects of alcohol abuse and remain sober (Tr. 116). Dr. Schorr did not even diagnose a history of alcohol abuse (Tr. 118).

Therefore, I find that the ALJ's decision is supported by substantial evidence in the record and that the record, read as a whole, presents sufficient evidence to support the conclusions of the ALJ.

## CONCLUSION

For the reasons set forth above, I do find substantial evidence in the record to support the ALJ's conclusion that the plaintiff is not eligible for DIB or SSI. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         August 21, 2006